Roger R. FLOREY, on his own behalf and on behalf of his minor son, Justin B. Florey, David R. Groethe, Marilyn Day, Evelyn Griesse, and Marilyn Fusfield

v.

SIOUX FALLS SCHOOL DISTRICT 49–5, Richard L. Bohy, President of the Board of Education, Doris Larson, David Brandt, Pam Nelson, and John Simko, Jr., Members of the Board of Education, and Dr. John W. Harris, Superintendent of Schools, and their Agents, employees and successors.

No. CIV78–4120.

United States District Court, D. South Dakota.

Feb. 13, 1979.

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., for plaintiffs.

Deming Smith, Davenport, Evans, Hurwitz and Smith, Sioux Falls, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

A variety of Christmas assemblies has been presented in the Sioux Falls public schools for a number of years. During the Christmas season of 1977, two Sioux Falls kindergarten classes rehearsed, memorized and then performed for parents a Christmas assembly which was replete with religious content including a responsive discourse between the teacher and the class entitled, "The Beginners Christmas Quiz." The "Quiz" consisted of the following:

> Teacher: Of whom did heav'nly angels sing,
> And news about His birthday bring?
> Class: Jesus.
> Teacher: Now, can you name the little town
> Where they the Baby Jesus found?
> Class: Bethlehem.
> Teacher: Where had they made a little bed
> For Christ, the blessed Saviour's head?
> Class: In a manger in a cattle stall.
> Teacher: What is the day we celebrate
> As birthday of this One so great?
> Class: Christmas.

A complaint about the program was made by one of the kindergartner's parents, Roger L. Florey, who is a party to this action.

In response to this complaint, as well as to complaints about Christmas assemblies

which had been received in the past, Defendant Dr. John W. Harris, Superintendent of Schools, proposed that the School Board of Sioux Falls School District No. 49–5 (hereinafter School Board) set up a citizen's committee to study the issue of church and state in relationship to school district functions. A committee was formed early in 1978.

The committee developed a policy statement and rules [1] in conjunction therewith and submitted them to the School Board. After public hearings were held, the School Board initially adopted the policy and rules set forth in Appendix A on November 13, 1978. The School Board finally adopted the policy and rules on December 4, 1978.

On November 30, 1978, Plaintiffs filed an action for declaratory and injunctive relief. Plaintiffs allege that the policy and rules adopted by the School Board violate the Establishment Clause of the First Amendment to the United States Constitution. In their prayer for declaratory relief, Plaintiffs ask this Court to declare that the policy and rules are unconstitutional and therefore void. Furthermore, in their prayer for injunctive relief, Plaintiffs ask this Court to enjoin the Defendants from enforcing the policy and from failing to instruct all public school officials in Sioux Falls that all Christmas assemblies must be absolutely and irrevocably secular.

This Court heard the evidence on the motion for the preliminary injunction on December 7, 1978. After the hearing, the parties agreed that the evidentiary hearing on the motion for the preliminary injunction could be consolidated with the trial on the merits of the case. The Plaintiffs presented three witnesses, all of whom are ordained clergymen. These individuals testified that the singing of Christmas songs which contained religious content, even when presented in a secular, non-devotional setting, constitutes a religious exercise. These witnesses testified that the objective content of songs such as "Silent Night"

does not change even though the purpose in singing the song or in listening to the song might vary.

The evidence presented by the Defendants focused on the inherent musical value of Christmas songs having religious texts. For instance, the Supervisor of Music for the Sioux Falls School system testified that Christmas songs with religious content were taught and performed for purposes of providing students with a complete musical education. Defendants' witnesses testified that the simple *studying* of Christmas songs with religious content in a classroom setting would not provide the student with a complete musical education because an integral part of studying music is *performing* music. Defendants' witnesses did not agree with Plaintiffs' witnesses that the *singing* of Christmas songs with religious content at a school Christmas assembly *ipso facto* constituted a religious exercise or activity. Defendants acknowledged that the kindergarten program which was presented in 1977 would not be permitted under the policy and rules developed and adopted in 1978.

Defendants further testified that the school programs for the 1978 Christmas season had been prepared to conform with the policy and rules set forth in Appendix A. Consequently, Defendants argued, the granting of the preliminary injunctive relief sought by Plaintiffs would work a great hardship upon the Defendants.

After hearing the evidence and considering the briefs, this Court denied Plaintiffs' motion for a preliminary injunction. This denial was based on the fact that the traditional criteria for granting preliminary injunctive relief had not been satisfied. Because Defendants had relied upon the policy and rules in preparing for the 1978 Christmas assemblies, this Court found that the potential hardship to the Defendants in granting Plaintiffs' motion for a preliminary injunction was greater than any hardship occasioned by the Plaintiffs should the preliminary injunction not issue. Further-

---

1. The rules cited in this Opinion are contained in Appendix A, II, Rules, "Observance of Religious Holidays."

more, the Court found that the threat of irreparable harm to the Plaintiffs should the Defendants not be preliminarily enjoined as Plaintiffs had requested was small. The Court also found that the probability of Plaintiffs' success on the merits was not so great that the burden which would be imposed on the Defendants by the granting of a preliminary injunction, at the height of the Christmas season and in the midst of the presentation of Christmas school assemblies, would be justified. Finally, the Court concluded that the granting of Plaintiffs' motion for a preliminary injunction in the middle of the Christmas season would not be in the public interest. This Court specifically reserved its rulings upon Plaintiffs' requests for a permanent injunction and for declaratory relief.

This Court therefore has before it the merits of this case: whether the policy and rules adopted by the Sioux Falls School Board violate the Establishment Clause of the First Amendment to the United States Constitution.

The Establishment Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion . . . ." The clause was made applicable to the States by the Fourteenth Amendment, *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Murdock v. Pennsylvania,* 319 U.S. 105, 108, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). There have been a multitude of cases which have construed this clause. Most of the cases have either involved the issues of (1) public financial aid to sectarian educational institutions or (2) the allowance of arguably religious exercises or activities in public educational institutions. From these cases, a three-part test has emerged which is to be used in evaluating cases arising under the Establishment Clause. The test was articulated by Chief Justice Burger in *Lemon v. Kurtzman,* 403 U.S. 602, 612–613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) as follows:

First the (activity) must have a secular legislative purpose; second, its principal or primary effect must be one that nei-

ther advances nor inhibits religion; finally, the (activity) must not foster "an excessive government entanglement with religion." (Citations omitted.)

In order for a challenged practice to pass constitutional muster, each part of the test must be met.

The case before this Court is one of first impression and one which presents an extremely close question of law. If the policy and rules adopted by the Sioux Falls Board of Education allow the schools to involve themselves in religious activities and exercises as a part of the observance of the Christmas holidays, the policy and rules cannot stand. If, however, the rules adopted and the programs and treatment of religious subjects which occur pursuant to the rules do not constitute inherently religious activities, then the policy and rules can withstand constitutional attack.

It should be noted at the outset that this Court finds that the kindergarten program presented in 1977 which was quoted in part in this opinion was a predominantly religious activity. That particular program exceeded the boundaries of what is constitutionally permissible under the Establishment Clause. The new policy and rules, however, properly administered, would not permit the presentation of such a program because the treatment of religious subjects in that instance was neither prudent nor objective.

This Court is aware that there has been animated and forceful public response to this lawsuit. A great percentage of the people who have responded against Plaintiffs' cause of action have argued that the public schools should be allowed to *promote* the Christian religion. Although a large segment of the public is apparently unaware of the fact, such a view is contrary to the decisions of the United States Supreme Court in the seminal cases of *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) and *School District of Abington Tp., Pa. v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). If the policy and rules are to withstand constitutional attack, it will not be for the reasons which

many letter writers are urging. The Romans, at one time in world history, threw Christians to the lions! This was tragic, but the Romans were able to do this because they had the power to do so and they outnumbered the Christians. By the same token, numerical superiority of Christians should never be the basis for advancing the Christian religion and inhibiting other religions in our schools.

In *School District of Abington Tp., Pa. v. Schempp, supra,* 222, 83 S.Ct. 1571, the United States Supreme Court articulated the first two segments of the three-part test to be employed in the analysis of causes of action arising under the Establishment Clause of the First Amendment to the United States Constitution. The high court stated:

The test may be stated as follows: what are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion.

The precise activity under scrutiny in the *Abington* case was state action requiring that schools begin each day with a Bible reading, without comment. The Court determined that although secular purposes were undoubtedly served by this practice, the primary purpose and effect were to advance religion.

In the case at bar, Plaintiffs maintain that just as assuredly as the prayer composed by the Board of Regents and recited by New York students in *Engel v. Vitale, supra,* and the recitation of Bible verses in *School District of Abington Tp., Pa. v. Schempp, supra,* constituted religious activities, so the policy and rules implemented by the Sioux Falls Board of Education allow the public schools in Sioux Falls to be en-

gaged in religious activities. They specifically argue that Rules, 1, 3 and 4, which are set forth in Appendix A, exceed the boundaries of what is constitutionally permissible under the Establishment Clause. This Court cannot so find.

■ First of all, Plaintiffs have simply mischaracterized Rule 1.[2] The rule makes it abundantly clear that schools in the Sioux Falls School District may observe holidays which have *both* a religious and a secular significance. This rule appears to distinguish between holidays with a purely religious significance, such as Pentecost, Ash Wednesday and Good Friday, which may not be observed in the public schools, and those holidays such as Christmas and Easter, with both a religious and secular basis, which may be observed. Rule 1 cannot be determinative of this action. Because of this Court's finding on Rule 1, Plaintiffs' argument that Rule 1 is unconstitutionally overbroad need not be considered.

Plaintiffs also strenuously object to Rules 3 and 4 as allowing the schools to engage in inherently religious activities. While Plaintiffs agree that students may study various religions and holidays in the public schools, they argue that permitting schools to present Christmas assemblies which contain songs with religious content goes beyond the realm of study and involves the schools in the impermissible activity of promoting the Christian religion. Similarly, they argue, Rule 4 allows the schools to involve themselves in inherently religious activities. The purpose and effect of these two rules, they maintain, is to promote the Christian religion.

■ Rule 3 does not permit the schools to engage in impermissible religious activities. Rather, Rule 3 seeks to ensure that schools may present holiday assemblies which contain religious art, literature or music as long as such materials are presented in a prudent and objective manner. The rule recognizes that much of our artistic tradi-

---

**2.** The several holidays throughout the year which have a religious and a secular basis may be observed in the public schools.

tion has a religious origin. Religious texts are frequently used in Christmas music. Much of this art, while religious in origin, has acquired a significance which is no longer confined to the religious sphere of life. It has become integrated into our national culture and heritage. To allow students *only* to study and *not* to perform such works when they have developed an independent secular and artistic significance would give students a truncated view of our culture.

Justice Jackson made the following observations which are pertinent to the legal problem which is now before this Court in his concurring opinion in *People of State of Illinois ex rel. McCollum v. Board of Education of School Dist. No. 71, Champaign County, Ill., et al.,* 333 U.S. 203, 236, 68 S.Ct. 461, 477, 92 L.Ed. 649 (1948). He stated:

> Music without sacred music, architecture minus the cathedral, or painting without the scriptural themes would be eccentric and incomplete, *even from a secular point of view.* . . . The fact is that, for good or for ill, nearly everything in our culture worth transmitting, everything which gives meaning to life, is saturated with religious influences, derived from paganism, Judaism, Christianity—both Catholic and Protestant—and other faiths accepted by a large part of the world's peoples. (Emphasis added.)

To rule unconstitutional a policy which allows Christmas assemblies to contain material having religious significance if such material is presented in a prudent and objective manner would leave the schools in the position of only being permitted to present programs that are eccentric and incomplete.

The purpose of the policy and rules is to expose and involve the student in the full spectrum of our Western musical tradition. Music is selected for its inherent musical value. Performance is an intrinsic part of a musical education. The testimony presented by Defendant Peterson and Defendant Harris also revealed that the purpose in formulating and adopting the policy and

rules was to guide school personnel in chartering a constitutionally valid course in this sensitive area.

This Court cannot begin to gauge the effect that the presentation of school Christmas assemblies containing *some* material with religious content will have on persons of various persuasions and religious predilections. The Plaintiffs' witnesses have indicated that the presentation of materials having religious content at a school Christmas assembly would constitute a religious experience or activity in their minds. This Court is of the firm belief that if materials with religious content were presented to these same individuals in the classroom in a totally secular manner, they would still attach a similar religious meaning to them.

The United States Supreme Court has not diluted the standard of review so that we are forced to evaluate the effect of these materials on each and every individual. Rather, the policy, rules and programs presented in accordance therewith must be evaluated to determine if they have the *primary* effect of either advancing or inhibiting religion. See, *e. g. McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) and *School District of Abington Tp., Pa. v. Schempp, supra.* Because Christmas music with religious content has been assimilated into our culture, this Court finds that the performance of Christmas music with religious content does not constitute a religious activity *per se.* The primary effect of presenting these materials at a school Christmas assembly in accordance with Rule 3 is not to promote a religion. Therefore, Rule 3's primary effect is secular.

Likewise, Rule 4 does not permit the school to engage in constitutionally impermissible activities. The purpose of Rule 4 is to allow the display of religious symbols under certain circumstances. The rule states that the reason for such display is to show examples of the religious and cultural heritage of the holiday. Such symbols can only be on display temporarily. The purpose of the rule is clearly educational. The

effect is not to promote a religion. Proper administration of the policy is the key here. This Court cannot be called upon to rule, item by item, upon the constitutionality of each and every act, of each and every class in each and every school. If the policy is properly executed, there will be no constitutional problem. If not, there will be a constitutional problem. There are not enough courts in this whole land to police every situation which arises. To feel otherwise is sheer sophistry.

Declaring the policy and rules unconstitutional would also have the effect of demonstrating a hostility toward religion. As Justice Douglas stated in *Zorach v. Clauson,* 343 U.S. 306, 314, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952):

> [W]e find no constitutional requirement which makes it necessary for government to be hostile to religion and to throw its weight against efforts to widen the effective scope of religious influence.

The Supreme Court has set forth this principle in numerous cases, including *Everson v. Board of Education of Ewing Tp.,* 330 U.S. 1, 18, 67 S.Ct. 504, 91 L.Ed. 711 (1947) and *Committee for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 760, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973).

Defendants object to any analysis of the policy and rules under the third part under the three part test, *i. e.* excessive entanglement. Defendants argue that cases such as *Lemon v. Kurtzman, supra,* in which the three-part test was developed, are factually distinguishable from the case at bar. While the cases are distinguishable this Court simply does not agree with Defendants' analysis. We do not see any reason not to employ the test. In *Committee for Public Education and Religious Liberty v. Nyquist, supra,* 772–773, 93 S.Ct. 2965, the United States Supreme Court made this observation:

> [T]he now *well-defined three-part* test that has emerged from our decisions is a product of considerations derived from the *full sweep* of the Establishment Clause cases. Taken together, these decisions dictate that to pass muster under

the Establishment Clause the law in question . . . .. third, must avoid excessive government entanglement with religion. (Emphasis added.)

At least one circuit court of appeals has analyzed a case arising under the Establishment Clause and *Engel v. Vitale, supra,* and its progeny, under all three parts of the *Lemon* test. See, *Meltzer v. Board of Public Instruction of Orange Cty.,* 548 F.2d 559 (5th Cir. 1977), rehearing *en banc,* 577 F.2d 311 (5th Cir. 1978). The policy and rules must be evaluated under each part of the test.

■ The entanglement test was articulated by the United States Supreme Court in *Lemon v. Kurtzman, supra,* 403 U.S. 614–615, 91 S.Ct. 2112:

> In order to determine whether the government entanglement with religion is excessive, we must examine the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority.

It is highly speculative to assert that benefit will accrue to any religious institution or religion through the policy and rules adopted by the Sioux Falls Board of Education and the programs presented in conformance with those rules.

Furthermore, this Court cannot find that the school system provides any aid to religion or to any religious institution through its policy and rules. Any aid which the school system provides to religion through the implementation of its policy and rules could also easily be provided by objective study of religion and religious art in the classroom. It is true that an individual's religious sensibilities might possibly be kindled by participating in a school Christmas assembly in which songs with religious texts are sung. It is also possible that religion might be equally "promoted" when a Christmas song with a religious text is studied objectively in the classroom. The school cannot guarantee that exposure to various religions and religious ideas will not aid religion in some cases. Similarly, the

school cannot guarantee that the type of exposure and participation allowed by Rules 3 and 4 will not benefit, in some fashion or other, any religious institution by the acquisition of a convert. The type of "aid" which the policy and rules might afford is not the variety which a Court should or can attempt to control. Finally, this Court finds that the policy, rules and the implementation thereof do not result in *any* particular relationship between the school and any religious authority.

In conclusion, Plaintiffs' request for relief, asking this Court to declare Defendants' policy and rules unconstitutional and void, will be denied.

Further, Plaintiffs' prayer for a permanent injunction against Defendants from enforcing the said policy and rules will be denied.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

## APPENDIX A

### I. POLICY

#### Recognition of Religious Beliefs and Customs

It is accepted that no religious belief or non-belief should be promoted by the school district or its employees, and none should be disparaged. Instead, the school district should encourage all students and staff members to appreciate and be tolerant of each other's religious views. The school district should utilize its opportunity to foster understanding and mutual respect among students and parents, whether it involves race, culture, economic background or religious beliefs. In that spirit of tolerance, students and staff members should be excused from participating in practices which are contrary to their religious beliefs unless there are clear issues of overriding concern that would prevent it.

The Sioux Falls School District recognizes that one of its educational goals is to advance the students' knowledge and appreciation of the role that our religious heritage has played in the social, cultural and historical development of civilization.

### II. RULES

#### Observance of Religious Holidays

The practice of the Sioux Falls School District shall be as follows:

1. The several holidays throughout the year which have a religious and a secular basis may be observed in the public schools.

2. The historical and contemporary values and the origin of religious holidays may be explained in an unbiased and objective manner without sectarian indoctrination.

3. Music, art, literature and drama having religious themes or basis are permitted as part of the curriculum for school-sponsored activities and programs if presented in a prudent and objective manner and as a traditional part of the cultural and religious heritage of the particular holiday.

4. The use of religious symbols such as a cross, menorah, crescent, Star of David, creche, symbols of Native American religions or other symbols that are a part of a religious holiday is permitted as a teaching aid or resource provided such symbols are displayed as an example of the cultural and religious heritage of the holiday and are temporary in nature. Among these holidays are included Christmas, Easter, Passover, Hannukah, St. Valentine's Day, St. Patrick's Day, Thanksgiving and Halloween.

5. The school district's calendar should be prepared so as to minimize conflicts with religious holidays of all faiths.

#### Religion in the Curriculum

Religious institutions and orientations are central to human experience, past and present. An education excluding such a significant aspect would be incomplete. It is essential that the teaching *about*—and not *of*—religion be conducted in a factual objective and respectful manner.

Therefore, the practice of the Sioux Falls School District shall be as follows:

1. The District supports the inclusion of religious literature, music, drama and the arts in the curriculum and in school activities provided it is intrinsic to the learning experience in the various fields of study and is presented objectively.

2. The emphasis on religious themes in the arts, literature and history should be only as extensive as necessary for a balanced and comprehensive study of these areas. Such studies should never foster any particular religious tenets or demean any religious beliefs.

3. Student-initiated expressions to questions or assignments which reflect their beliefs or non-beliefs about a religious theme shall be accommodated. For example, students are free to express religious belief or non-belief in compositions, art forms, music, speech and debate.

*Dedications and Commencement*

Traditions are a cherished part of the community life and the Sioux Falls School District expresses an interest in maintaining those traditions which have had a significance to the community. Such ceremonies should recognize the religious pluralism of the community.

Therefore, the practice of the Sioux Falls School District shall be as follows:

1. A dedication ceremony should recognize the religious pluralism of the community and be appropriate to those who use the facility. An open invitation should be extended to all citizens to participate in the ceremony.

2. Traditions, i. e., invocation and benediction, inherent in commencement ceremonies, should be honored in the spirit of accommodation and good taste.

3. Because the baccalaureate service is traditionally religious in nature, it should be sponsored by agencies separate from the Sioux Falls School District.