The Honorable Walter M. Day State Representative Post Office Box 274 Blytheville, AR 72315
Dear Representative Day:
This is in response to your request for an opinion on the legality of the reading of Bible verses in the public schools.
It is my opinion that this practice clearly violates the establishment clause of the United States Constitution. This was precisely the holding of the United States District Court for the Eastern District of Arkansas in Goodwin v. Cross County School District No. 7, 394 F. Supp. 427 (E.D.Ark. 1973). The court in Goodwin, after stating the facts, held:
 This is, beyond all question, a utilization of the tax-established and tax-supported public school system to aid religious practices. McCollum v. Board of Education, supra, page 210, 68 S.Ct. 461. And it falls squarely under the ban of the First Amendment (made applicable to the States by the Fourteenth) as was construed in the Case of Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711. The court there stated:
 `Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or nonattendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect "a wall of separation between Church and State."'
394 F. Supp at 424.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Note: The following documents were included as attachments to 89-063.
Opinion No. 84-198
October 29, 1984
Hon. John Dawson State Representative Post Office Box 336 Camden, AR 71701
Dear Representative Dawson:
This is in response to your opinion request wherein you posed the following inquiries:
 1. Is it permissible for the Fairview Public School District to allow the Ouachita Bible Society to present non-denominational religious programs at various schools within the district during school hours and with attendance voluntary in nature?
 2. If this action is improper, can the programs be presented off campus by the Society during school hours?
For the following reasons, the answer to both of your inquiries is no, and this office must advise against either of the above practices.
The First Amendment to the United States Constitution which prohibits any law respecting an establishment of religion also prohibits laws which prevent the free exercise thereof. In its examination of claimed establishment clause violations or impermissible burdens on free exercise, the United States Supreme Court has articulated the concerns which underly [underlie] itsFirst Amendment decisions and has developed a methodology to determine whether an establishment clause violation exists. This analysis asks three questions: (1) Does the policy or practice have a secular (non-religious) purpose? (2) Is the primary effect of the policy or practice one which neither advances nor inhibits religion? (3) Does the policy or practice avoid an excessive intanglement with religion? Lemon v. Kurtzman, 403 U.S. 602,612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). If the answer to all THREE questions is in the affirmative, the policy or practice does not impermissibly provide for an establishment of religion and is thus constitutional. Lubbock Civil Liberties Union v. Lubbock Independent School District, 669 F.2d 1038 (5th Cir. 1982).
Inasmuch as there are cases on point with respect to your first inquiry, application of the above analysis is unnecessary. In McCollum v. Bd. of Ed., 333 U.S. 203, 68 S.Ct. 461, 91 L.Ed. 649
(1948), the United States Supreme Court held that religious instruction in public school facilities on school time at no cost to the school district was still unconstitutional.
There is also a case on point which at first glance would appear to make permissible the second situation you described. In 1952, the United States Supreme Court found as constitutional "released time" for public school students to attend religious classes off-campus. Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679,96 L.Ed. 954 (1952). It must be noted, however, that the Zorach decision was handed down prior to the methodology established by the Supreme Court in Lemon.
When Lemon is applied to the question of whether a religious program can be presented off-campus during school hours, an affirmative answer to the following questions is required in order that the practice not be considered unconstitutional. Are the students allowed to attend the programs for non-religious purposes? Does the policy or practice neither advance nor inhibit religion? Does the policy or practice avoid an excessive intanglement with religion?
Because presentation of the religious program off-campus is an apparent alternative to on-campus teaching, it would appear that it would be difficult to claim that the practice was not for religious purposes. Additionally, is not the alternative practice being developed in order to make possible or available the religious studies otherwise not allowable? Without addressing the third question, it is the opinion of this office that since all three questions cannot be answered in the affirmative, as required under Lemon, the practice of presenting religious studies off-campus during school hours is constitutionally suspect.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General C. R. McNair III.
September 5, 1985
Samuel E. Ericsson Director of the Center for Law and Religious Freedom 6901 Braddock Road P.O. Box 1492 Springfield, VA 22151
Re: Attorney General Opinion No. 84-198
re Released Time Religious Education
Dear Mr. Ericsson:
Thank you for your letter of July 11, 1985. I, too, appreciate the tone displayed in our communications. I did not, however, intend to convey in earlier communications the message that "the crux of our correspondence has been whether Zorach v. Clauson,343 U.S. 306 (1952), remains good law." On the contrary, I acknowledge that Zorach has not been overturned as evidenced by the Supreme Court's recent reference to it in Grand Rapids v. Ball, 53 U.S.L.W. 5006, 5010 (July 1, 1985).
It is my understanding that the purpose of our correspondence has been whether the conclusion reached in Attorney General Opinion No. 84-198 is justified or whether it is in error. Hence, although I recognize that Zorach has not been overruled, the United States Supreme Court's decision in Grand Rapids v. Ball, supra, lends support to my continued attitude that a situation such as the one giving rise to Opinion No. 84-198 is vulnerable to constitutional attack. I feel that we cannot confidently predict that the "passive indifference" found in Zorach is necessarily present in the situation giving rise to the above opinion. Because the practice in question would today be subject to the Lemon analysis, I must continue to refrain from approving a practice the impetus for which, if individual motivations were subjected to judicial inquiry, might not be as it appears on the surface.
Opinion No. 88-115
June 17, 1988
The Honorable Bill Stephens State Representative 28 Forest Lane Conway, AR 72032
Dear Representative Stephens:
This is in response to your request for an opinion regarding Christmas programs offered in the public schools. Your question is restated as follows:
 How far can the School District go and what can it do on Christmas programs and the religious connotations surrounding the birth of the Christ child as opposed to pure Santa Claus, etc[.]?
The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . ." This clause was made applicable to the states by theFourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296 (1940); Murdock v. Pennsylvania, 319 U.S. 105, 108 (1943).
The Supreme Court has noted, however, that "total separation (between church and state) is not possible in an absolute sense." Lemon v. Kurtzman, 403 U.S. 602, 614 (1971). It is the duty of the court to decide, as a matter of fact, whether or not any activity constitutes the exercise of religion. Brown v. Dade County Christian Schools, 556 F.2d 310, cert. den'd 434 U.S. 1063
(1978).
In determining whether governmental activity violates the Establishment Clause, the inquiry calls for line drawing, for no fixed per se rule can be framed. Lynch v. Donnelly, 465 U.S. 668
(1984). As a result, the Court has developed a three (3) part test for determining when certain governmental activity falls within the constitutional boundaries: First, the activity must have a secular purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the activity must not foster "an excessive governmental entanglement with religion." Lemon, 403 U.S. at 612-613. In order for a challenged practice to pass constitutional muster, each part of the test must be met.
Secular Purpose The purpose and the educational goal should be to advance the student's knowledge and appreciation of the role that a religious heritage has played in the social, cultural, and historical development of civilization. Florey v. Sioux Falls School District 49-5, 619 F.2d 1311, 1314 (1980). The secular purpose would be achieved if the activity is for the advancement of the student's knowledge of society's cultural and religious heritage, as well as the provision of an opportunity for students to perform a full range of music, poetry, and drama that is likely to be of interest to the students and their audience. Id. There can be no intent to serve a religious purpose.
Effect The First Amendment does not forbid all mention of religion in public schools; it is the effect, the advancement or inhibition of religion, that is prohibited. Hence, the study of religion is not forbidden "when presented objectively as a part of a secular program of education." Abington School District v. Schempp,374 U.S. 203 (1963).
Public performance may be considered a legitimate part of secular study. Florey, 619 F.2d at 1316. This does not mean, of course, that religious ceremonies can be performed in the public school under the guise of "study". It does mean, however, that much of the art, literature, and music associated with traditional holidays, particularly Christmas carols, has acquired a significance which is no longer confined to the religious sphere of life. They have become integrated into our national culture and heritage. See Florey, 464 F. Supp. 911 (1979).
The Florey court, on the other hand, found a kindergarten Christmas program containing "The Beginner's Christmas Quiz" unconstitutional. The program and treatment of religious subjects were classified as "inherently religious activities." Florey,464 F. Supp. at 914. This program was not considered to be "integrated into our natural culture and heritage".
Excessive Entanglement To avoid excessive entanglement, the school districts are called upon to determine whether a given activity is religious. This type of decision inheres in every curriculum choice and should be faced by school administrators and teachers. Florey, 619 F.2d at 1318.
These precepts compel the conclusion that programs focused solely upon informing students about "the birth of the Christ Child" are constitutionally suspect," and may be considered an "inherently religions activity."
As previously noted, the court will draw these lines based upon the three (3) part test presented in Lemon v. Kurtzman. The Eight[h] Circuit Court of Appeals in Florey v. Sioux Falls School District analyzed the policies and rules on holiday programs which were adopted by the school board. The court held: (1) the school board's adoption of policy and rules permitting observance of holidays having both a religious and secular basis was not activated by an attempt to advance or inhibit religion; (2) the primary effect of the rules was the advancement of a secular program of education, not a religion; and (3) the rules did not unconstitutionally entangle the school district in religion or religions institutions.
I have attached a restatement of these policies, obtained from the Florey case. (619 F.2d 1311, 1319-1320) I hope that these will be of some guidance for any programs you might plan in the future.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
I. POLICY
Recognition of Religious Beliefs and Customs It is accepted that no religious beliefs or non-belief should be promoted by the school district or its employees, and none should be disparaged. Instead, the school district should encourage all students and staff members to appreciate and be tolerant of each other's religious views. The school district should utilize its opportunity to foster understanding and mutual respect among students and parents, whether it involves race, culture, economic background or religious beliefs. In that spirit of tolerance, students and staff members should be excused from participating in practices which are contrary to their religious beliefs unless there are clear issues of overriding concern that would prevent it.
The Sioux Falls School District recognizes that one of its educational goals is to advance the students' knowledge and appreciation of the role that our religious heritage has played in the social, cultural and historical development of civilization.
II. RULES
Observance of Religious Holidays The practice of the Sioux Falls School District shall be as follows:
 1. The several holidays throughout the year which have a religious and a secular basis may be observed in the public schools.
 2. The historical and contemporary values and the origin of religious holidays may be explained in an unbiased and objective manner without sectarian indoctrination.
 3. Music, art, literature and drama having religious themes or basis are permitted as part of the curriculum for school-sponsored activities and programs if presented in a prudent and objective manner and as a traditional part of the cultural and religious heritage of the particular holiday.
 4. The use of religious symbols such as a cross, menorah, crescent, Star of David, creche, symbols of Native American religions or other symbols that are a part of a religious holiday is permitted as a teaching aid or resource provided such symbols are displayed as an example of the cultural and religious heritage of the holiday and are temporary in nature. Among these holidays are included Christmas, Easter, Passover, Hannukah, St. Valentine's Day, St. Patrick's Day, Thanksgiving and Halloween.
 5. The school district's calendar should be prepared so as to minimize conflicts with religious holidays of all faiths.
Religion in the Curriculum Religious institutions and orientations are central to human experience, past and present. An education excluding such a significant aspect would be incomplete. It is essential that the teaching about — and not of — religion be conducted in a factual objective and respectful manner.
Therefore, the practice of the Sioux Falls School District shall be as follows:
 1. The District supports the inclusion of religious literature, music, drama and the arts in the curriculum and in school activities provided it is intrinsic to the learning experience in the various fields of study and is presented objectively.
 2. The emphasis on religious themes in the arts, literature and history should be only as extensive as necessary for a balanced and comprehensive study of these areas. Such studies should never foster any particular religious tenents [tenets] or demean any religious beliefs.
 3. Student-initiated expressions to questions or assignments which reflect their beliefs or non-beliefs about a religious theme shall be accommodated. For example, students are free to express religious belief or non-belief in compositions, art forms, music, speech and debate.
Dedications and Commencement Traditions are a cherished part of the community life and the Sioux Falls School District expresses an interest in maintaining those traditions which have had a significance to the community. Such ceremonies should recognize the religious pluralism of the community.
Therefore, the practice of the Sioux Falls School District shall be as follows:
 1. A dedication ceremony should recognize the religious pluralism of the community and be appropriate to those who use the facility. An open invitation should be extended to all citizens to participate in the ceremony.
 2. Traditions, i.e., invocation and benediction inherent in commencement ceremonies, should be honored in the spirit of accommodation and good taste.
 3. Because the baccalaureate service is traditionally religious in nature, it should be sponsored by agencies separate from the Sioux Falls School District.